128 P.3d 234

In the Matter of the ESTATE OF
Mary WINN, Deceased.

The Estate of Mary Winn, Deceased, by
and through George Winn on behalf of
themselves and survivors of Mary Winn,
Plaintiff/Appellant,

v.

Plaza Healthcare, Inc., an Arizona corpo-
ration d/b/a Plaza Healthcare; Plaza
Healthcare Scottsdale Campus, an Ari-
zona corporation d/b/a Plaza Health-
care, Defendants/Appellees.

No. 1 CA–CV 05–0129.

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 14, 2006.

Review Granted June 27, 2006.

Skousen, Skousen, Gulbrandsen & Pa-
tience, P.C. By David L. Abney, Mesa, Attor-
neys for Plaintiff/Appellant.

Jones, Skelton & Hochuli, P.L.C. By David
S. Cohen and Eileen Dennis GilBride, Phoe-
nix, Attorneys for Defendants/Appellees.

## OPINION

PORTLEY, Judge.

¶1 We are asked to decide whether the superior court erred when it ruled that Arizona Revised Statutes ("A.R.S.") section 14–3108(4) (2005)[1] limited the ability of George Winn, as the personal representative of his late wife's estate, to prosecute claims on behalf of the estate. Because Mr. Winn secured his appointment as personal representative for the Estate of Mary Winn more than two years after her death, he cannot prosecute the claims that survived his wife's death. Accordingly, we affirm the summary judgment against the estate.

## BACKGROUND

¶2 Mary Winn died on February 6, 1999. She was survived by her husband, George Winn. More than four years later, Mr. Winn filed a lawsuit in the name of "The Estate of Mary Winn, Deceased, By and Through George Winn on Behalf of Themselves and Survivors of Mary Winn" against Appellees Plaza Healthcare, Inc.; Plaza Healthcare Scottsdale Campus; and John Doe Administrator of Plaza Healthcare (collectively, "Plaza Healthcare"). The September 2003 complaint alleged that Plaza Healthcare violated

1. We cite the current version of statutes when no    material changes have been made.

the Adult Protective Services Act ("APSA"), A.R.S. § 46–455(B) (Supp.1998),[2] and committed malpractice that negligently caused Mrs. Winn's death.

¶ 3 Mr. Winn was appointed the personal representative of his wife's estate during May 2004. Two months later he filed a motion to substitute "George Winn as Personal Representative of the Estate of Mary Winn and on behalf of himself individually and the survivors of Mary Winn" as the plaintiff in the action. Plaza Healthcare opposed the motion, and moved for summary judgment.

¶ 4 After oral argument, the superior court found that "decedent's property includes a cause of action for wrongful death/medical negligence and adult abuse. In order to prosecute these claims, George Winn will be required to expend estate assets to cover the costs of litigation ... related to litigation of these claims." It then found that Mr. Winn "is not authorized to bind the estate to pay for any costs of litigation or any costs related to pursuing these claims[ ] per [A.R.S. § ]14–3108(4)." Consequently, the court denied the motion to substitute Mr. Winn as the personal representative, and granted Plaza Healthcare's motion for summary judgment.

¶ 5 Mr. Winn timely appealed after entry of the signed judgment. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 6 Because the issue is whether the superior court properly interpreted A.R.S. § 14–3108(4), we review the issue *de novo*. *N. Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 303, ¶ 8, 93 P.3d 501, 503 (2004).

¶ 7 Our goal in interpreting a statute is to find and give effect to the intent of the legislature. *In re Estate of Jung*, 210 Ariz. 202, 204, ¶ 12, 109 P.3d 97, 99 (App.2005). We first look to the language of the statute because it is the best and most reliable index of a statute's meaning. *Janson ex rel. Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). If the language is unambiguous, we will apply it without resorting to other methods of statutory interpretation. *In re Estate of Jung*, 210 Ariz. at 204, ¶ 12, 109 P.3d at 99. If the legislative intent of the statute is unclear, we will consider other factors, "such as the context of the statute, the language used, the subject matter ... [and] its effects and consequences." *Id.*

¶ 8 At the time of her death, it is alleged that Mary Winn had a cause of action for medical malpractice and violation of APSA. Those claims survived her death. A.R.S. § 14–3110 (2005); § 14–3703(C) (2005); Ariz. R. Civ. P. 17(b), (c); *James v. Phoenix Gen. Hosp., Inc.*, 154 Ariz. 594, 604 n. 15, 744 P.2d 695, 705 n. 15 (1987) ("Where medical malpractice results in the death of the patient, the cause of action for medical malpractice survives."); *In re Guardianship/Conservatorship of Denton*, 190 Ariz. 152, 155, 945 P.2d 1283, 1286 (1997) ("[T]he plain wording of A.R.S. § 46–455 allows the trial court to award damages for pain and suffering.").[3]

---

**2.** At the time of Mary Winn's death in 1999, A.R.S. § 46–455 provided for a seven-year statute of limitations. A.R.S. § 46–455(I) (Supp.1998). This statute was amended in 2003, shortening the statute of limitations to two years. A.R.S. § 46–455(K) (2005). Arizona Revised Statutes § 12–505(C) (2003) provides that "[I]f an amendment of pre-existing law shortens the time of limitation fixed in the pre-existing law so that an action under pre-existing law would be barred when the amendment takes effect, such action may be brought within one year from the time the new law takes effect." Therefore Mr. Winn's claim under the APSA was timely when filed on September 17, 2003.

**3.** The wrongful death claim was not an asset of Mary Winn's estate, but properly belongs to her survivors. A.R.S. § 12–612(A) (2003); *In re Milliman's Estate*, 101 Ariz. 54, 61, 415 P.2d 877, 884 (1966). Although George Winn, for himself and on behalf of Mary Winn's survivors, would be the proper plaintiff in a wrongful death action, he did not argue to the superior court and does not argue on appeal that he is entitled to pursue that cause of action as Mary's surviving spouse and therefore has waived that argument. *Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) ("[A]bsent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal."); *DeElena v. S. Pac. Co.*, 121 Ariz. 563, 572, 592 P.2d 759, 768 (1979) (issues not argued on appeal are deemed waived). Moreover, the complaint shows on its face that the claim was not brought within two

¶ 9 Mr. Winn, as the personal representative, would generally be the proper plaintiff to prosecute the estate's APSA claim. Ariz. R. Civ. P. 17(b), (c); A.R.S. § 14–3110; § 14–3703(C); *Lacer v. Navajo County,* 141 Ariz. 396, 404, 687 P.2d 404, 412 (App.1983) ("[O]nly the personal representative of the deceased may bring an action under A.R.S. § 14–3110," holding that because the estate was never probated and no personal representative was appointed, no action could be brought).

¶ 10 Mr. Winn did not become the personal representative within two years of his wife's death. He did not secure his appointment as the estate's personal representative until five years after her death. As a result, A.R.S. § 14–3108(4) limited his authority as personal representative.

¶ 11 Specifically, the statute provides that: An informal probate or appointment proceeding or formal testacy or appointment proceeding ... shall not be commenced more than two years after the decedent's death, except:

4. An informal probate or appointment or a formal testacy or appointment proceeding may be commenced thereafter if no court proceeding concerning the succession or administration has occurred within the two year period. If proceedings are brought under this exception, **the personal representative has no right to possess estate assets as provided in § 14–3709 beyond that necessary to confirm title thereto in the rightful successors to the estate.** Claims other than expenses of administration shall not be presented against the estate.

*Id.* (emphasis added).

¶ 12 The statute lists two requirements. First, a person has two years to secure ap-

pointment as a personal representative. *Id.* Second, if the person secures the appointment more than two years after the decedent's death, the personal representative "has no right to possess estate assets as provided in § 14–3709 beyond that necessary to confirm title ... in the rightful successors to the estate." *Id.*

¶ 13 Plaza Healthcare contends that since the statute limits Mr. Winn's authority as a personal representative because he was appointed pursuant to the exception, he cannot prosecute the estate's APSA claim. Mr. Winn, however, responds that the statute only prohibits possession of estate assets "as provided in § 14–3709," and does not prohibit a late-appointed personal representative from asserting a cause of action belonging to the decedent pursuant to A.R.S. §§ 14–3110, –3703(C).

¶ 14 The principles of statutory interpretation guide our analysis. *See supra* ¶ 8. The plain language of A.R.S. § 14–3108(4)—"the personal representative has no right to possess estate assets as provided in § 14–3709 beyond that necessary to confirm title thereto in the rightful successors to the estate"— clearly identifies that its purpose is to limit the power and authority of a late-appointed personal representative to administer the decedent's estate. It specifically provides that the late-appointed personal representative may only possess estate assets to "confirm title thereto in the rightful successors to the estate." A.R.S. § 14–3108(4).

¶ 15 We also examine the phrase "the personal representative has no right to possess estate assets as provided in § 14–3709." *Id.* In *In re Estate of Jorgenson* we concluded that A.R.S. § 14–3709 (2005) [4] is ambiguous.

---

years of Mary Winn's death, as required by Arizona law. *See* A.R.S. § 12–542(2) (2003).

The medical malpractice claim was also subject to a two-year statute of limitations and was not brought within two years of Mary Winn's death. *See* A.R.S. § 12–542(1). A delay in the appointment of a personal representative does not toll the statute of limitations. *See Hamrick v. Indianapolis Humane Soc'y, Inc.,* 174 F.Supp. 403, 409 (S.D.Ind.1959) ("[I]f the delay was due to the action or inaction of the complaining party, the statute will not be stayed."). As a

result, the only claim at issue in this appeal is the APSA claim.

4. A.R.S. § 14–3709. Duty of personal representative; possession of estate; discovery of concealed assets.

A. Except as otherwise provided by a decedent's will, every personal representative has a right to, and shall take possession or control of, the decedent's property, except that any real property or tangible personal property may be left with or surrendered to the person presump-

159 Ariz. 214, 216, 766 P.2d 87, 89 (App.1988). Section 14–3709 authorizes a personal representative to take possession of the property of the estate if he or she believes it is necessary for purposes of administration. A.R.S. § 14–3709(A); *In re Estate of Jorgenson,* 159 Ariz. at 215, 766 P.2d at 88. The statute also allows a personal representative to "maintain an action to recover possession of property or to determine the title thereto." A.R.S. § 14–3709(A). The statute does not, however, transfer or confer ownership of the decedent's property to the personal representative, but merely allows that person to "take possession or control of" the property pending the administration of the estate. *Id.*

¶ 16 Mary Winn's APSA claim survived her death and became an asset of her estate. *See* A.R.S. § 14–1201(16), (41) (1995) (defining "estate" as including the property of the decedent and "property" as "anything that may be the subject of ownership"); *see also Federated Servs. Ins. Co. v. Estate of Norberg,* 101 Wash.App. 119, 4 P.3d 844, 848 (2000) (holding that the survival statute allows decedent's existing causes of action to survive and continue as an asset of his or her estate). To prosecute the claim, George Winn, as the personal representative, would need to possess the claim as set forth in § 14–3709. The plain language of § 14–3108(4), however, clearly prohibits him from possessing the claim, and, in turn, prosecuting it.

¶ 17 Arizona's statutes governing decedents' estates are patterned on the Uniform Probate Code ("UPC"). *See Estate of P.K.L. v. J.K.S.,* 189 Ariz. 487, 492, 943 P.2d 847, 852 (App.1997). Specifically, A.R.S. § 14–3108 parallels UPC section 3–108 (1998).[5]

tively entitled to it unless or until, in the judgment of the personal representative, possession of the property by the personal representative will be necessary for purposes of administration. The request by a personal representative for delivery of any property possessed by an heir or devisee is conclusive evidence, in any action against the heir or devisee for possession of the property, that the possession of the property by the personal representative is necessary for purposes of administration. The personal representative shall pay taxes on, and take all steps reasonably necessary for the management, protection and preservation of, the estate in the personal representative's possession. [T]he personal representative may maintain an action to recover possession of property or to determine its title.

B. If the personal representative or other person interested in the estate of a decedent complains to the court, on oath, that a person is suspected of having concealed, embezzled, conveyed or disposed of any property of a decedent, or possesses or has knowledge of deeds, bonds, contracts or other writings which contain evidence of or tend to disclose the right, interest or claim of a decedent to any property, or the will of a decedent, the court may cite that person to appear before the court and may examine that person on oath on the complaint. If that person is not in the county where letters have been issued, the person may be cited and examined before the court in the county where the person is found or the court issuing the citation. If the person appears and the court determines that the claim is unfounded, the court shall allow that person necessary expenses out of the estate.

C. If the person cited as provided by subsection B refuses to appear and submit to an examination, or to answer questions relevant to the complaint, the court may commit that person to

jail until the person submits to the order of the court or is discharged according to law.

D. If on examination or from other evidence adduced at the hearing it appears that a person has concealed, embezzled, conveyed or disposed of any property of a decedent, or possesses or has knowledge of deeds, bonds, contracts or other writings tending to disclose the right, interest or claim of a decedent to any property, or the will of a decedent, the court may order that person to turn over the documents or disclose knowledge to the personal representative and may commit the person cited to jail until the order is complied with or the person is discharged according to law. The examination shall be reduced to writing and filed in court. The order for the disclosure made on this examination is prima facie evidence of the right of the personal representative to the property in an action brought for recovery of that property, and a judgment shall be for double the value of the property, or for return of the property and damages in addition to the property equal to the value of the property. The court may also award reasonable attorney fees and costs.

5. UPC § 3–108(a)(4) reads:

(a) No informal probate or appointment proceeding or formal testacy or appointment proceeding, other than a proceeding to probate a will previously probated at the testator's domicile and appointment proceedings relating to an estate in which there has been a prior appointment, may be commenced more than three years after the decedent's death, except:

(4) an informal appointment or a formal testacy or appointment proceeding may be commenced thereafter if no proceedings concerning the succession or estate administration has occurred within the three year period after

¶ 18 In *In re Estate of Baca*, the court examined the limitations placed on a late-appointed personal representative by New Mexico Statutes 1978 section 45–3–108(A)(4) (1995), which also parallels UPC § 3–108. *In re Estate of Baca*, 127 N.M. 535, 984 P.2d 782, 785–86 (Ct.App.1999). The court held that a late-appointed personal representative was only permitted to "[confirm] title to property or [handle] claims for expenses of administration." *Id.* Additionally, it stated that "a claim affecting property passing to the Decedent's heirs, or . . . for money damages . . . [is] beyond the scope of confirming titles or dealing with expenses of administration." *Id.* at 786. Under this analysis, the exception permitting the late appointment of a personal representative in UPC § 3–108, and therefore the exception in A.R.S. § 14–3108, does not enable the late-appointed personal representative to bring a damages action on behalf of the estate.

¶ 19 Mr. Winn maintains that he is not seeking to possess his deceased wife's APSA claim. He contends that he is only possessing estate assets pursuant to A.R.S. § 14–3108(4) to confirm title.

¶ 20 His argument and actions differ from those allowed by statute. Section 14–3108(4) allows a late-appointed personal representative to possess estate assets to confirm title *in the rightful successors to the estate.* Mr. Winn, however, seeks to possess and pursue Mary's APSA claim and cause of action, and if successful, to confirm title over any recovery in the estate. Such action is mentioned in § 14–3709 and specifically excluded from what a late-appointed personal representative can do pursuant to § 14–3108(4).

¶ 21 Our conclusion is supported by the purposes and policies of the Revised Arizona Probate Code, which include promoting "a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors." A.R.S. § 14–

decedent's death, but the personal representative has no right to possess estate assets as provided in Section 3–709 beyond that necessary to confirm title thereto in the successors to the estate and claims other than expenses of administration may not be presented against the estate. . . ."

1102(B)(3) (2005). In *In re Estate of Wood*, we determined A.R.S. § 14–3108 was a limitation on the court's power to appoint a personal representative in order to bring finality in administering estates and not a general statute of limitations. 147 Ariz. 366, 368, 710 P.2d 476, 478 (App.1985). We relied on the comments from the UPC indicating that § 3–108 (A.R.S. § 14–3108) creates a conclusive presumption of intestacy as guidance in interpreting the Revised Arizona Probate Code. *Id.* ("If no will is probated within three years from death, the section has the effect of making the assumption of intestacy final . . . .") (quoting *In re Estate of Taylor*, 207 Mont. 400, 675 P.2d 944, 945–46 (1984)); *In re Estate of Dobert*, 192 Ariz. 248, 252, ¶ 17, 963 P.2d 327, 331 (App.1998) ("When a statute is based on a uniform act, we assume that the legislature 'intended to adopt the construction placed on the act by its drafters.'") (quoting *State v. Sanchez*, 174 Ariz. 44, 47, 846 P.2d 857, 860 (App.1993)).

¶ 22 In light of the clear purpose of § 14–3108 to encourage personal representatives to be appointed within two years of the decedent's death, we conclude that the legislature intended the statutory exceptions to be narrow. We do not believe that the legislature intended to allow a late-appointed personal representative to have the same authority as a timely-appointed personal representative. To do so would eliminate any meaningful distinction between the powers held by a timely-appointed personal representative and a late-appointed personal representative, and, in essence, nullify the timeliness requirement. *See Pinal Vista Properties, L.L.C. v. Turnbull*, 208 Ariz. 188, 190, ¶ 10, 91 P.3d 1031, 1033 (App.2004) ("[E]ach word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant.").[6]

6. We reject Mr. Winn's argument that the superior court denied the estate the benefit of the seven-year statute of limitation then applicable to APSA claims. A timely-appointed personal representative would have been able to file such an action within the limitations period provided by the APSA. *See* A.R.S. § 46–455(I); *see also* A.R.S. § 12–505(C) (2003).

¶ 23 Moreover, the exception under which Mr. Winn was late-appointed as the personal representative specifically prohibits him from presenting claims other than for administrative expenses against the estate. A.R.S. § 14–3108(4); *see also Estate of Baca*, 127 N.M. 535, 984 P.2d 782 (holding claims against the estate were time-barred; the personal representative was appointed pursuant to a New Mexico statute that is materially identical to § 14–3108(4)).[7] To allow Mr. Winn to prosecute this lawsuit on behalf of the estate would also allow him, if Plaza Healthcare prevailed, to use the statutory exception to prevent Plaza Healthcare from recovering any attorney's fees, costs, or other damages against the estate. Such would be untenable because it would create an incentive for an estate to have the personal representative appointed after the two year statute, to litigate any claim and preclude a successful defendant any opportunity to recover from the estate. We do not believe that the legislature intended such a result.

¶ 24 Based on the foregoing, A.R.S. § 14–3108(4) limits Mr. Winn's authority as a late-appointed personal representative for his deceased wife's estate. He only has limited authority to possess estate property, and cannot prosecute Mary Winn's APSA claim against Plaza Healthcare. Consequently, the superior court properly granted Plaza Healthcare's summary judgment motion.

## CONCLUSION

¶ 25 Based on the foregoing, we affirm the rulings and judgment of the superior court. Consequently, we deny Mr. Winn's request for costs on appeal.

PATRICK IRVINE, P.J., and SUSAN A. EHRLICH, J., concur.

---

7. A "claim" includes "liabilities of the estate that arise at or after the death of the decedent."

A.R.S. § 14–1201(6) (2005).