SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| In the Matter of the Estate of MARY WINN, | ) ) |
| | ) Arizona Supreme Court |
| Deceased. | ) No.  CV-06-0076-PR |
| _____ | ) |
| | ) Court of Appeals |
| THE ESTATE OF MARY WINN, | ) Division One |
| Deceased, by and through GEORGE | ) No.  1 CA-CV 05-0129 |
| WINN on behalf of themselves and | ) |
| survivors of MARY WINN, | ) Maricopa County |
| | ) Superior Court |
| Plaintiff/Appellant, | ) No.  CV2003-017852 |
| | ) |
| v. | ) |
| | ) |
| PLAZA HEALTHCARE, INC., an | ) **O P I N I O N** |
| Arizona corporation d/b/a PLAZA | ) |
| HEALTHCARE; PLAZA HEALTHCARE | ) |
| SCOTTSDALE CAMPUS, an Arizona | ) |
| corporation d/b/a PLAZA | ) |
| HEALTHCARE, | ) |
| | ) |
| Defendants/Appellees. | ) |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Ruth Harris Hilliard, Judge

**REVERSED AND REMANDED**
_____

Opinion of the Court of Appeals, Division One
212 Ariz. 117, 128 P.3d 234 (2006)

**VACATED**
_____

CHARLES M. BREWER, LTD.                                    Phoenix
       By    David L. Abney
Attorneys for The Estate of Mary Winn

JONES, SKELTON & HOCHULI, P.L.C.                           Phoenix
       By    David S. Cohen
             Eileen Dennis GilBride
Attorneys for Plaza Healthcare, Inc. and
Plaza Healthcare Scottsdale Campus

WILKES & McHUGH, P.A.                                      Phoenix
       By    Melanie L. Bossie
             James M. Morgan
             Terry Schneier
Attorneys for Amici Curiae Estate of Mildred Fazio, Estate of
August Rustad, Estate of Genoveva Moreno, Estate of Ruth Wall,
Estate of Neil Hicks, and Estate of Lambert Pfeifer
_____

**B E R C H**, Vice Chief Justice

**¶1**       This case requires us to determine whether Arizona Revised Statutes ("A.R.S.") section 14-3108(4) (2005) precludes a late-appointed personal representative from pursuing an elder abuse claim on behalf of a decedent's estate.  We hold that it does not.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**       Mary Winn died on February 6, 1999, after residing for less than a month in a nursing facility operated by Plaza Healthcare.  More than four and one-half years later, but still within the applicable limitations period, Mary's husband, George Winn, brought an Adult Protective Services Act ("APSA") claim against Plaza on behalf of himself, Mary's estate, and Mary's survivors, alleging that Plaza or its agents abused or neglected

-

Mary while she resided at Plaza's Scottsdale campus. He also brought medical malpractice and wrongful death claims, which are not at issue.

¶3    On May 7, 2004, more than five years after Mary's death, George was appointed personal representative of her estate. He then moved to substitute himself, in his capacity as the estate's personal representative, as the plaintiff in the case against Plaza. Plaza moved for summary judgment, asserting that A.R.S. § 14-3108(4) precludes a personal representative appointed more than two years after the death of the decedent from prosecuting claims on behalf of the estate. The superior court granted the motion and the court of appeals affirmed. *In re Estate of Winn*, 212 Ariz. 117, 122, ¶ 24, 128 P.3d 234, 239 (App. 2006).

¶4    We granted review to determine the effect of late appointment on a personal representative's ability to pursue an APSA claim on behalf of a decedent's estate. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## DISCUSSION

¶5    The provision of the Adult Protective Services Act at issue, A.R.S. § 46-455 (Supp. 2006),[1] was passed in 1988 and

---

[1]    There have been no relevant substantive changes to the statute since Mary Winn's death in 1999. In this opinion,

-

amended in 1989 to protect incapacitated and vulnerable adults. *See* 1988 Ariz. Sess. Laws, ch. 85, § 2; 1989 Ariz. Sess. Laws, ch. 118, §§ 1, 3. The amended statute creates a remedial cause of action against those who abuse, neglect, or exploit the elderly. A.R.S. § 46-455(B), (O). We construe such remedial statutes broadly to effectuate the legislature's purpose in enacting them. *See Special Fund Div. v. Indus. Comm'n*, 191 Ariz. 149, 152, ¶ 9, 953 P.2d 541, 544 (1998). The legislature underscored its desire to protect the elderly by providing that APSA claims "shall not be limited or affected by the death of the incapacitated or vulnerable adult," A.R.S. § 46-455(P), or "by any other civil remedy . . . or any other provision of law," *id*. § 46-455(O).

¶6    The provision of the Arizona probate code at issue, on the other hand, arguably limits the power of a late-appointed personal representative to pursue an APSA claim on behalf of a deceased victim's estate. Arizona Revised Statutes § 14-3108(4) provides that a personal representative who is appointed to represent an estate more than two years after the decedent's death "has no right to possess estate assets as provided in § 14-3709 beyond that necessary to confirm title thereto in the

---

unless otherwise noted, we refer to the current version of A.R.S. § 46-455.

-

rightful successors to the estate."[2]  Plaza contends that A.R.S. § 14-3108(4) precludes George Winn from pursuing his late wife's APSA claim on behalf of her estate because, as a late-appointed personal representative, he may not "possess" the claim, an estate asset, "beyond that necessary to confirm title thereto in the rightful successors to the estate."  Both the superior court and the court of appeals agreed and disposed of the case on this basis.  *See Winn*, 212 Ariz. at 120, ¶ 16, 128 P.3d at 237.

¶7      Resolving this dispute requires us to construe § 46-455 of APSA in light of § 14-3108(4) of Arizona's probate code. We must determine whether the APSA provision permits a late-appointed personal representative to prosecute an elder abuse claim on behalf of the estate of the deceased victim, or whether § 14-3108(4) precludes doing so.  We review such questions of statutory construction de novo.  *4501 Northpoint LP v. Maricopa County*, 212 Ariz. 98, 100, ¶ 9, 128 P.3d 215, 217 (2006).

¶8      Our primary task in interpreting statutes is to give effect to the intent of the legislature.  *Mail Boxes, etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995).  To ascertain intent, we examine the words of the statutes at issue, "the polic[ies] behind the statute[s] and the

---

[2]    Section 14-3709, which sets forth the right and duty of the personal representative to possess or control the decedent's property for purposes of administration, is not directly at issue in this case.  *See* A.R.S. § 14-3709(A) (2005).

-

evil[s] [that they were] designed to remedy." *Calvert v. Farmers Ins. Co. of Ariz.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985).

¶9    The language of APSA § 46-455 is clear in creating a remedial cause of action that may not be limited by the death of the vulnerable adult "or any other provision of law." *See* A.R.S. § 46-455(O)–(P). The legislature has stated its intent to increase the remedies available to elder abuse victims by providing that APSA claims proceed unimpeded by either the death of the elder abuse victim or limitations imposed by other laws. *See In re Guardianship/Conservatorship of Denton*, 190 Ariz. 152, 156-57, 945 P.2d 1283, 1287-88 (1997); *see also Estate of McGill v. Albrecht*, 203 Ariz. 525, 528, ¶ 6, 57 P.3d 384, 387 (2002) (regarding increased remedies). The policy underlying § 46-455 is also apparent: to protect some of society's most vulnerable persons from abuse, neglect, and exploitation. *See McGill*, 203 Ariz. at 528, ¶ 6, 57 P.3d at 387; *Denton*, 190 Ariz. at 156-57, 945 P.2d at 1287-88. Finally, the evils sought to be remedied — elder abuse, neglect, and exploitation — are also unmistakable. *See McGill*, 203 Ariz. at 527-28, ¶ 1, 57 P.3d at 386-87; *Denton*, 190 Ariz. at 156-57, 945 P.2d at 1287-88.

¶10    Plaza counters that the language of A.R.S. § 14-3108(4) of the probate code is equally clear in providing that a personal representative appointed more than two years after the

-

death of a decedent may not pursue an APSA claim, an estate asset, on behalf of the decedent's estate because the representative may not "possess" the claim. Such possession, Plaza asserts, is necessary to bring the claim. Moreover, Plaza maintains, the policy of the probate code — to ensure the efficient administration of estates — militates against allowing claims to be brought more than two years after the death of the vulnerable adult. *See* A.R.S. § 14-1102(B)(3) (2005).

¶11 We must thus determine whether these provisions are inconsistent and, if so, which controls. We note preliminarily that we must resolve only whether § 14-3108(4) bans an APSA suit brought pursuant to § 46-455(B), not whether, as Plaza broadly posits, it would bar the bringing of any lawsuit. We leave the latter question to a later day.

¶12 This court previously interpreted conflicting APSA and probate code provisions in *Denton*, 190 Ariz. 152, 945 P.2d 1283. The issue in *Denton* was whether an estate may recover damages for pain and suffering pursuant to § 46-455 after the death of an elder abuse victim. *Id.* at 154, 945 P.2d at 1285. Section 46-455 allows recovery of damages for pain and suffering and also provides that an APSA cause of action is not limited by any other provision of law or by the death of the elder abuse

-

victim. A.R.S. § 46-455(H)(4), (O)-(P);[3] *Denton*, 190 Ariz. at 155-56, 945 P.2d at 1286-87. Probate code § 14-3110, on the other hand, provides that damages for pain and suffering do not "survive the death of the person entitled thereto" and thus may not be asserted by the personal representative. *Denton*, 190 Ariz. at 156, 945 P.2d at 1287 (discussing 1974 predecessor to § 14-3110). In concluding that APSA pain and suffering damages may be recovered after the death of an elder abuse victim, we relied on the plain wording of § 46-455(O) and (P). *Id.* We found "no reason for the legislature to include these two subsections . . . other than to exclude the elder abuse statute from the survival statute's limitations." *Id.* The language of § 46-455, we concluded, demonstrated the legislature's intent to remove limitations on APSA remedies, such as damages for pain and suffering, that might be imposed by other provisions of law, including the probate code. *Id*. at 156-57, 945 P.2d at 1287-88.

¶13     We also emphasized the protective policy underlying § 46-455:

> The legislature's intent and the policy behind [§ 46-455] are clear. Arizona has a substantial population of elderly people, and the legislature was concerned about elder abuse. . . .

> Furthermore, most vulnerable or incapacitated

---

[3]    At that time, current subsection (H)(4) was designated subsection (F)(4), current subsection (O) was designated subsection (M), and current subsection (P) was designated subsection (O). A.R.S. § 46-455(F)(4), (M), (O) (1989).

-

> adults are near the end of their lives. Under
> defendants' theory, the tortfeasor would have a great
> incentive to delay litigation until the victim dies.
> If we were to subscribe to defendants' theory, the
> policy of [§ 46-455] would not be furthered.

*Id.*

¶14     Section 46-455's protective policy resounds here as well. Recognizing that many APSA claims will not be filed until after the death of the elder abuse victim, and thus will be pursued by a personal representative, the legislature intended through subsections (O) and (P) to remove probate code or other limitations on the personal representative's ability to seek a remedy on behalf of a deceased elder abuse victim's estate. This freedom from restrictions furthers the goal of protecting the elderly from abuse, neglect, and exploitation.

¶15     We thus conclude here, as we did in *Denton*, that limitations placed on personal representatives by the probate code do not restrict APSA claims. We therefore hold that a late-appointed personal representative may bring an APSA claim pursuant to § 46-455(B) on behalf of a deceased victim's estate provided that the limitations period on the claim has not run. This result comports with the plain language of § 46-455 and serves the goal of protecting vulnerable adults.

¶16     This conclusion is supported as well by the rules of statutory construction. Those rules provide that "when there is conflict between two statutes, 'the more recent, specific

-

statute governs over the older, more general statute.'" *Denton*, 190 Ariz. at 157, 945 P.2d at 1288 (quoting *Lemons v. Superior Court*, 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984)). Section 14-3108(4) of the probate code applies to the administration of *all* estates in which probate commences more than two years after the decedent's death. Section 46-455, on the other hand, applies only to a limited group of "incapacitated or vulnerable adult[s]" who have been abused, neglected, or exploited by their caregivers. A.R.S. § 46-455(B). In addition to being the more specific statute, APSA § 46-455 is also more recent than probate code § 14-3108(4). Section 14-3108, including subsection (4), was enacted in 1973. 1973 Ariz. Sess. Laws, ch. 75, § 4. The relevant provisions of APSA were enacted in 1989. 1989 Ariz. Sess. Laws, ch. 118, § 3. Thus, § 46-455, being the more recent and specific statute, would prevail over § 14-3108(4). *See Denton*, 190 Ariz. at 157, 945 P.2d at 1288.

¶17    Practical and policy considerations also support our conclusion. Plaza's suggested reading of § 14-3108(4) has the effect of truncating the limitations period for APSA claims brought under the old statute, A.R.S. § 46-455(I) (Supp. 1998), from seven years to two years if the victim dies and no personal representative is appointed within two years after death, as was the case here. Had Mary lived, she could have pursued her APSA claim because it was filed within the limitations period.

-

Because she died, however, and no personal representative was appointed within two years after her death, Plaza would have us bar Mary's APSA suit, even though filed within the limitations period. This interpretation frustrates the APSA requirement that a cause of action brought pursuant to the statute "shall not be limited or affected by the death of the incapacitated or vulnerable adult." *See* A.R.S. § 46-455(P). Allowing § 14-3108(4) of the probate code to eliminate George's right to pursue the suit, when Mary could have maintained it had she been alive, directly "limits or affects" the right to bring suit after the death of the elder abuse victim, violating the language and spirit of APSA § 46-455.

¶**18**      Plaza argues, however, that despite language in § 46-455 prohibiting limitations on APSA claims, limitations are in fact imposed on APSA claims by sources such as the rules of civil procedure and evidence. Plaza reasons that limitations imposed by the probate code should similarly be allowed. Limitations imposed by rules of civil procedure and evidence are not, however, the kinds of limitations the legislature had in mind when drafting subsections (O) and (P). The legislature intended to remove limitations on an elder abuse victim's available *remedies*, including limitations on recovery arising at or after the victim's death. *See* A.R.S. § 46-455(O)-(P); *Denton*, 190 Ariz. at 156-57, 945 P.2d at 1287-88. Section 14-

-

3108(4), if read to preclude any APSA claim brought by a personal representative appointed more than two years after the death of an elder abuse victim, is precisely the type of limitation on remedies subsections (O) and (P) were designed to remove.

¶19     Finally, Plaza maintains that the policy of promoting the efficient administration of estates underlying the probate code, and § 14-3108 in particular, supports barring a late-appointed personal representative from bringing an APSA claim on behalf of a deceased victim's estate.  We conclude, however, that a full statement of the probate policy supports a contrary result.

¶20     As Plaza correctly observes, the probate code was designed to "promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors."  A.R.S. § 14-1102(B)(3); *see also In re Estate of Wood*, 147 Ariz. 366, 368, 710 P.2d 476, 478 (App. 1985) (finding "finality" "implicit in this stated purpose"). The scant case law on § 14-3108 in Arizona and analogous Uniform Probate Code provisions in other states,[4] however, illustrates that efficient administration and finality are not ends in

---

[4]     Arizona's probate code is modeled after the Uniform Probate Code.  *Wood*, 147 Ariz. at 368, 710 P.2d at 478; *see also* A.R.S. § 14-1102(5) (2005).

themselves, but rather are intended to protect the decedent's successors and creditors from disruptions to possession of the decedent's property. *See In re Estate of Taylor*, 675 P.2d 944, 946 (Mont. 1984); *see also Wood*, 147 Ariz. at 368, 710 P.2d at 478 (citing *Taylor* with approval in analyzing A.R.S. § 14-3108); *In re Estate of Baca*, 984 P.2d 782, 786 (N.M. Ct. App. 1999) (citing *Taylor* with approval in analyzing a statute analogous to A.R.S. § 14-3108(4)). Yet Plaza, a putative tortfeasor, seeks to invoke this policy to protect itself from potential liability, and, if successful, would deprive Mary Winn's successors of a potentially valuable estate asset — the APSA claim. Such a result would contravene the policy of efficient administration of estates for the benefit of successors and creditors that underlies the probate code. Our holding today avoids this result.

¶21     Because APSA provisions and policy resolve this case, we need not determine the general limitations on the powers of a late-appointed personal representative imposed by A.R.S. § 14-3108(4), including whether a personal representative must "possess" a claim in order to pursue it on behalf of a decedent's estate.

### CONCLUSION

¶22     For the foregoing reasons, we conclude that A.R.S. § 14-3108(4) does not preclude a late-appointed personal

-

representative from bringing an otherwise timely APSA claim under § 46-455(B) on behalf of a deceased victim's estate. Accordingly, the judgment of the court of appeals is vacated, the superior court's grant of summary judgment in favor of Plaza is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
Rebecca White Berch, Vice Chief Justice

CONCURRING:

_____
Ruth V. McGregor, Chief Justice

_____
Michael D. Ryan, Justice

_____
Andrew D. Hurwitz, Justice

_____
W. Scott Bales, Justice

-