494 P.2d 24

**SANTA CRUZ IRRIGATION DISTRICT, a Municipal Corporation, Petitioner,**

v.

**The CITY OF TUCSON, a Municipal Corporation, et al.; The Honorable Joe JACOBSON, Judge of the Superior Court, Pima County, Arizona, Division II, Real Parties in Interest, Respondents.**

**No. 10559.**

Supreme Court of Arizona,
In Banc.

March 1, 1972.

Wolfe, Greer & Mustacci by David K. Wolfe, Tucson, for petitioner.

Herbert E. Williams, City Atty. by Richard H. Day, Asst. City Atty., Tucson, for respondents The City of Tucson and Frank Brooks.

Murphy, Vinson & Hazlett by James M. Murphy, Tucson, for respondents Rosens and Brophys.

Jennings, Strouss & Salmon by James A. Riggins, Jr., and Riney B. Salmon II, Phoenix, for amicus curiae Maricopa County Municipal Water Conservation Dist. No. 1.

STRUCKMEYER, Justice.

This Special Action was commenced by the Santa Cruz Irrigation District against the City of Tucson and others to enjoin the construction, extension and service of domestic water from Tucson's lines or water system to any portion of a 22-acre tract within the District boundaries. We accepted jurisdiction pursuant to Constitution of Arizona, Article VI, § 4, A.R.S., and ordered a stay in all actions pending in the Superior Court of Pima County until determination of this proceeding.

The District asserts that it is an irrigation district, comprising approximately 365 acres, organized pursuant to A.R.S. § 45–1501 et seq.; that on March 18, 1960, the City of Tucson, a municipal corporation, annexed the area encompassed by the District; that approximately 22 acres in the center of the District were withdrawn from cultivation and a mobile home development was commenced by respondents Rosens and Brophys with plans to develop approximately 120 homes; that the District furnishes domestic water to one consumer on the 22 acres (15 on the 365); and that, over the objections of the District, the Rosens and Brophys contracted with Tucson for construction of a water system and for delivery of water to and in the area embraced within the development.

Respondents initially, as plaintiffs, petitioned the Superior Court of Pima County, praying that it issue a temporary restraining order against the City enjoining it from delivering water within the District's boundaries. A temporary restraining order was issued, but thereafter the Superior Court dissolved the restraining order and expressly denied respondent's request for a permanent injunction. The Court expressed the opinion that the District only had a claim for relief against the City upon the theory of inverse eminent domain. Accordingly, it directed that the action proceed to trial on that issue. The appli-

cation to this Court by the District for an injunction followed.

Every issue here presented has been settled adversely to the District by our decision in City of Mesa v. Salt River Project Agricultural Improvement and Power District, 92 Ariz. 91, 373 P.2d 722 (1962). There, as here, the Salt River Project was an agricultural improvement district organized for the purpose of reclaiming lands susceptible of irrigation. As an incident to its principal purpose, it maintained and operated an electric power system consisting of transmission and distribution lines, including retail electric services in rural areas. In the years following the district's rural electrification program, the City of Mesa extended its corporate limits so that the district was serving customers within Mesa whom the city wished to supply by its electric services and facilities.

In holding that Mesa could condemn the district's facilities, we stated that the exact status of the district escapes a simple definition, being denominated a political subdivision of the state and, by Article XIII, § 7, Constitution of Arizona, entitled to all the immunities and benefits granted to municipalities.

We said:

"The District is a municipal corporation of a peculiar type. [Citations.] Its primary function as that of an irrigation district has not changed by the constitutional amendment, Art. 13, § 7. In conducting its ordinary business it is not exercising governmental or political prerogatives as it is not operated for the direct benefit of the general public but only those inhabitants of the District itself. [Citation.]"

It was pointed out that an irrigation district is essentially a business corporation with the attributes of sovereignty which are only incidentally conferred for the purpose of better enabling it to function and accomplish the business and economic purposes for which it was organized. *And we held that an irrigation district's power to sell electricity is a power incidental to its primary purpose of providing water for irrigation.*

The board of directors of an irrigation district, by statute A.R.S. § 45–1578, subsec. 10, as amended by Laws of 1971, is authorized to establish "charges for service of irrigation, domestic water, electricity and other commodities." The only significant difference between the instant case and that of *Mesa* is that here the irrigation district is delivering domestic water rather than electricity. Just as we concluded there, that the power to sell electricity was a power incidental to the primary purpose of providing water for irrigation, we conclude here that the power to furnish domestic water is incidental to the primary purpose of providing water for irrigation.

In *Mesa*, in passing upon the rights of Mesa to acquire the electrical facilities of the Salt River Project, we held under the statute, A.R.S. § 12–1112, subsec. 3, that property which is already appropriated to a public use may be taken for another public use if it appears that the public use to which it is to be applied is a more necessary public use. We decided that where the public use is incidental to the basic purpose of the organization of an irrigation district, the services are a more necessary public use when offered by a municipality.

It is obvious that the service of domestic water is incidental to the primary purpose of providing water by the District for irrigation, City of Scottsdale v. McDowell Mountain Irrigation and Drainage District, 107 Ariz. 117, 483 P.2d 532 (1971), but that it is one of the fundamental purposes for the incorporation of cities and towns. *Cf.* Unity Light & Power Co. v. City of Burley, 92 Idaho 499, 445 P.2d 720 (1968). The right of Tucson to acquire by condemnation all or such part of the District's domestic water system is clear. We hold that the City may acquire by eminent domain the domestic water facilities of the District and may apply for immediate possession pursuant to the applicable statutes.

It is ordered that the stay order heretofore issued by this Court on the 13th day of October 1971 be quashed.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ.. concur.