851 P.2d 154

**CITY OF PHOENIX**

v.

**CITY OF GOODYEAR.**

**No. TX 91–01623.**

Tax Court of Arizona.

April 20, 1993.

Phoenix City Attorney by Philip M. Haggerty and Roderick G. McDougall, Phoenix, for plaintiff.

Norling, Oeser & Williams by Darrell E. Davis and Ronald L. Keyser, Phoenix, for defendant.

OPINION

SCHAFER, Judge.

This is an action for a tax refund brought by the City of Phoenix to recover transaction privilege taxes, interest, and penalty it paid to the City of Goodyear based upon the income Phoenix derives

from renting, leasing, and licensing property it owns at the Goodyear Airport. The tax period in question is July, 1987 through July, 1990. Phoenix protested the tax assessment in the administrative process and lost. Phoenix paid the taxes plus interest and penalty under protest, and filed a Complaint with this Court. Goodyear has filed a Motion for Summary Judgment. This Court grants summary judgment for Goodyear on all issues except the sale of aviation maps at the airport.

## Facts

Phoenix and Goodyear are municipal corporations of the State of Arizona. Pursuant to A.R.S. §§ 2–301, 2–302, Phoenix owns and operates the Goodyear Municipal Airport. The airport is located entirely within the city limits of Goodyear. Phoenix receives income from activities at the airport that includes hangar rentals, air carrier fees, aircraft tie-down fees, sales of aviation maps, and commissions from allowing vending machine (candy and soft drink) owners to locate their machines at the airport.

Prior to 1987, Goodyear levied transaction privilege taxes against Phoenix on the income it derived from its activities at the airport only when the activity (rental, leasing, licensing, commissions) was for a purpose other than aviation. In 1987, Goodyear adopted the Model City Tax Code. Among other things, the new code imposed a transaction privilege tax on all business activity based upon gross income from leasing, licensing for use, and renting property. Goodyear Tax Code § 8A–445. § 8A–270 of the code exempted governmental entities from the tax only when those entities rented to, leased to, or licensed another part of the same governmental entity. Goodyear Tax Code Regulation 8A–270.1. Sometime after adoption of the code, Goodyear audited Phoenix's rental activities at the airport and levied transaction privilege taxes of $21,727.56 based upon all income Phoenix derived from its rentals, fees, commissions, and sales at the airport.

Phoenix alleges that: (1) its activities at the airport are governmental activities and are exempt from taxation; (2) the income from the aviation map sales is not taxable because it is not rental income; (3) Goodyear's tax assessment is unconstitutional as applied to Phoenix because Goodyear excludes itself from taxation on the rental, leasing, and licensing activities it conducts at the airport; and (4) the penalty assessed by Goodyear against Phoenix is punitive and Phoenix, a governmental entity, is not accountable for punitive damages.

## Discussion

■ In Arizona, municipal corporations, like Goodyear, are granted authority to tax. Ariz. Const., art. IX, § 2; see also, City of Tempe v. Prudential Ins. Co., 109 Ariz. 429, 510 P.2d 745 (1973) (discussing delegation of taxing authority from the state legislature). Accordingly, Goodyear exercised its taxing authority by imposing a transaction privilege tax pursuant to Goodyear Tax Code § 8A–445.

Phoenix asserts that its activities at the airport are governmental activities and thus are exempt from Goodyear's transaction privilege tax. It is true, as Phoenix points out, that governmental activities are exempt from taxation. Salt River Project Agricultural Improvement and Power Dist. v. City of Phoenix, 129 Ariz. 398, 631 P.2d 553 (App.1981). Phoenix cites City of Phoenix v. Moore, 57 Ariz. 350, 113 P.2d 935 (1941) as direct support for its position here stating that Moore holds that income from admission fees to city swimming pools and golf courses is based upon the governmental activities of providing health, welfare, and recreational activities for the benefit of the city's citizens and, as such, is immune from taxation. But Moore does not go that far.

In Moore, the State Tax Commission attempted to tax Phoenix's income from city swimming pools and golf courses. The court found that the applicable statute allowed the State Tax Commission to levy taxes only on a "business" whose objective was profit and the pools and courses in question were part of the city's park system and not intended as instruments of profit. Moore, 57 Ariz. at 354, 113 P.2d at

939. The court specifically refrained from determining whether the city was engaged in a governmental or proprietary function.

The Goodyear Tax Code recognizes this general principle, that governmental activities are exempt from taxation, but then states that renting, leasing, or licensing to an entity "other than another department or agency of the municipality" is a proprietary (non-governmental) activity. Goodyear Tax Code § 8A–270; Goodyear Tax Code Regulation 8A–270.1. Goodyear Tax Code § 8A–445 provides in pertinent part:

(a) The tax rate shall be at an amount equal to two percent (2%) of the gross income from the business activity upon every person engaging in or continuing in the business of leasing, licensing for use, or renting real property located within the City for a consideration, to the tenant in actual possession, including any improvements, rights, or interest in such property ...

Goodyear Tax Code § 8A–270 provides in pertinent part:

(b) Transactions which, if conducted by any other person, would produce gross income subject to tax under this Chapter shall not be subject to the imposition of such tax if conducted entirely by a public educational entity; governmental entity, except "proprietary activities" of municipalities as provided by Regulation; or non-licensed business.

Goodyear Tax Code Regulation 8A–270.1 provides in pertinent part:

The following activities, when performed by a municipality, are considered to be activities of a person engaged in business for the purposes of this Chapter, and not excludable by reason of Section 8A–270:

(a) rental, leasing, or licensing for use of real property to other than another department or agency of the municipality.

This statutory language is clear; it is not necessary to resort to the rules of statutory interpretation to determine what it means—a municipality that engages in the business of renting, leasing, and licensing property it owns at the Goodyear Airport is subject to Goodyear's transaction privilege tax unless that municipality transacts its business with itself (renting, leasing, or licensing to one of its departments, for instance).

Phoenix operates the airport which is located entirely within the city limits of Goodyear. Its leasing of hangars and tie-downs, its licensing in the form of air carrier fees, and the commissions it receives from leasing airport space to vending machine operators, are business activities that fall within the scope of Goodyear Tax Code § 8A–445 and subject Phoenix to the tax. The sale of aviation maps at the airport, however, is different. That is not "leasing, licensing for use, or renting real property." Goodyear Tax Code § 8A–445. Aviation maps are not real property and a purchaser of a map does not rent or lease it; when he buys it he owns it. Accordingly, sales of the maps are not taxable activities under § 8A–445.

Phoenix next argues that Goodyear Tax Code Regulation 8A–270.1 allows Goodyear to exempt itself from the tax and because of that discrimination the regulation is unconstitutional. The regulation, however, is not directed at Goodyear; it applies to all municipalities. Under it, Goodyear would be exempt from the tax if it rented, licensed, or leased to one of its own governmental departments, but so would Phoenix or any other municipality that engaged in those activities. The fact that Goodyear may take advantage of its regulation, a regulation that applies to all similarly situated, does not render it discriminatory.

Phoenix's final argument, that the penalty assessed against it for failure to pay Goodyear's transaction privilege tax is actually punitive damages, is also without merit. Because Phoenix's activities are proprietary, it is subject to penalties for failing to pay its tax liability, like any other taxpayer would be.

### Disposition

In conclusion, the Court finds: (1) that Phoenix's activities at the Goodyear airport are proprietary and not exempt from taxation; (2) Phoenix's income from the sale of

aviation maps cannot be considered income from the business activity of leasing, licensing, or renting of real property and consequently is not subject to Goodyear's transaction privilege tax; (3) that Goodyear Regulation 8A–270.1, as written and applied in conjunction with Goodyear's Tax Code, is not unconstitutional; and (4) that the penalty assessed against Phoenix by Goodyear is "punitive" only in a limited sense, as a consequence for failing to do something or failing to do it timely, and that Phoenix, while acting in a proprietary manner, must pay penalties assessed against it like any other taxpayer. Accordingly, the Court holds that Defendant Goodyear is entitled to summary judgment on all issues except that involving the sale of aviation maps at the airport.